IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RODNEY GIBSON,** | Case Number 5:15 CV 119 |
| Petitioner, | Judge James G. Carr |
| v. | Magistrate Judge James R. Knepp, II |
| **MICHELE MILLER, WARDEN,** | |
| Respondent. | REPORT AND RECOMENDATION |

### INTRODUCTION

*Pro se* Petitioner Rodney Gibson ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Michele Miller ("Respondent") filed a Return of Writ (Doc. 8) with attached exhibits, and Petitioner filed a Traverse (Doc. 10). Subsequently, Respondent filed a Sur-Reply (Doc. 11) and Petitioner filed a Response (Doc. 12). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated February 19, 2015). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

Factual findings of state courts of appeals are presumed correct unless a petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760, 775 (6th Cir. 2013). This presumption of correctness applies to factual findings made by the court of appeals based on the state trial court record. *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). The Fifth District Court of Appeals, Stark County, made the following findings of fact:

This case arose on February 5, 2013 when Shawna Young, Amanda Tornero, and appellant were together at Young's apartment at Roe Court Southeast in Canton, Ohio. Young and Tornero testified the three had been smoking crack cocaine together off and on for several days. Tornero was living with Young at the time and dating appellant.

Around 2:00 a.m., appellant left the apartment for the night. Young and Tornero testified everything seemed fine when appellant left; he and Tornero kissed and hugged, said goodbye, and appellant exited the apartment. Tornero closed and locked the door behind him and sat back down with Young.

Moments later the women heard loud pounding on the front exterior door of the apartment, startling them. Young described the pounding as "forceful." Suddenly a piece of plastic securing the doorbell to the front door broke off and flew across the room.

Young grabbed a phone, called 911, and headed for the bathroom with Tornero following her. Tornero's dog also came into the bathroom. The pounding continued and Young heard the front door "squeak," indicating it had opened. She whispered to the 911 operator that the person was inside the apartment. Young and Tornero placed themselves against the bathroom door to hold it shut. Both women identified appellant as the person who forced his way into the apartment.

Appellant pushed the bathroom door open, the women pushed it closed, and appellant pushed it open again and entered the bathroom. Young was still on the phone with 911. Appellant struck Young, knocking the phone out of her hand, which fell to the floor and broke into pieces.

Tornero was in the corner behind Young. Young fell or ducked out of the way and saw appellant strike Tornero in the face. Tornero testified appellant also kicked her squarely in the face. Both women covered their faces.

Young left the bathroom to look for another phone and observed appellant rummaging in Tornero's purse before he left the apartment through the front door. Tornero's dog followed appellant out the door.

When questioned as to what might have led to the incident, Tornero testified appellant thought there was someone with her in the apartment after he left. Appellant kept asking "where's [he] at" and she told him no one else was there. She testified they had argued over appellant's "paranoia" about other men before.

Young found another phone and called 911 again. She found Tornero still in the bathroom bleeding from her nose. She asked if appellant struck her and Tornero replied he kicked her in the nose. Young gave Tornero a towel and went to the window to direct police to the apartment.

2

>Tornero was transported to Aultman Hospital where she was treated in the emergency room. The treating physician testified Tornero sustained a nasal bone fracture, swelling under both eyes, and bleeding from the nose consistent with being bludgeoned or some type of direct injury to the nasal bone. Tornero told the doctor she had been kicked and punched in the face by her boyfriend. She was treated that night and referred to a specialist.
>
>Young testified that shortly after their return from the hospital appellant started calling and texting Tornero offering to pay her to drop the charges. Tornero continued to have contact with appellant after the incident. She testified he texted her and called her with threats, promises, and apologies asking her to change her story.
>
>Defense counsel's investigator testified he spoke to Tornero on the telephone and she told him her injuries occurred when she was struck by the bathroom door. Tornero testified appellant told her to say this.
>
>### The Investigation
>
>Police officers investigating the incident found the front door of the apartment broken in, the bathroom door broken, and blood on the bathroom floor. A broken cell phone was on the floor. Tornero and Young were visibly upset and crying and told police what happened. Young provided a written statement at the hospital. The Canton Police I.D. Bureau took photographs of the scene and of Tornero's injuries. Swabs of blood were collected from the bathroom door and the rear exterior door of the apartment. Crime lab personnel testified blood on the bathroom door was identified as appellant's based upon a CODIS match in the statewide database.
>
>### The Fiancée's Testimony
>
>Appellant's finacée testified on his behalf at trial; she said appellant came home around 3:00 a.m. on February 5, 2013 "agitated, but not crazy." At some point appellant also showed up with a dog that stayed with them for several weeks. His finacée later learned the dog belonged to Tornero.

(Doc. 8-1, Ex. 7 at ¶¶ 2-15).

Petitioner challenges the factual recitation of the Fifth District in his Traverse. (Doc. 10, at 1-3). However, his challenges are a combination of his own testimony and conjecture, neither of which rises to the level of clear and convincing evidence to overcome the determinations of the jury or the Fifth District. Furthermore, his arguments go more to the sufficiency of the

3

evidence than to proving a distinct factual background. The Court will address the sufficiency of evidence in a separate section of this recommendation.

### PROCEDURAL BACKGROUND

The procedural history was accurately summarized in Respondent's brief; therefore, it is incorporated herein with only minor changes. (Doc. 8, at 4-6).

*Trial Court*

The April 2013 term of the Stark County Grand Jury issued an indictment charging Petitioner with one count of aggravated burglary, a felony of the first degree, one count of felonious assault, a felony in the second degree, one count of intimidation, a felony in the third degree, and one count of disrupting public services, a felony of the fourth degree. (Doc. 8-1, Ex. 1). Upon arraignment, Petitioner entered a plea of not guilty.

The case proceeded to trial and the jury found Petitioner guilty of aggravated burglary and felonious assault; he was found not guilty of intimidation and disrupting public services. (Doc. 8-1, Ex. 2). The trial court sentenced Petitioner to nine years in prison for aggravated burglary and three years in prison for felonious assault. The sentences were ordered to run consecutively for a total aggregate sentence of twelve years in prison. (Doc. 8-1, Ex. 3).

*Direct Appeal*

Represented by new counsel, Petitioner timely appealed to the Fifth District Court of Appeals. (Doc. 8-1, Ex. 4). He raised two assignments of error:

1. The trial court erred in preventing Appellant from introducing evidence of Shawna Young's prior conviction for soliciting for prostitution during cross-examination.

2. The Defendant's convictions for one count of aggravated burglary and felonious assault were against the manifest weight and sufficiency of the evidence.

(Doc. 8-1, Ex. 5). The State filed a response brief. (Doc. 8-1, Ex. 6). On May 27, 2014, the Fifth District Court of Appeals issued a decision and judgment entry overruling Petitioner's two assignments of error and affirmed the judgment of the Stark County Court of Common Pleas. (Doc. 8-1, Exs. 7-8).

On July 11, 2014, Petitioner, *pro se*, filed a notice of appeal with the Ohio Supreme Court. (Doc. 8-1, Ex. 9). In his Memorandum in Support of Jurisdiction, Petitioner raised the same two grounds for relief as he had in the appellate court. (Doc. 8-1, Ex. 10). On September 24, 2014, the Ohio Supreme Court declined to accept jurisdiction over the appeal pursuant to S.Ct. Prac. Rule 7.08(B)(4). (Doc. 8-1, Ex. 11).

### FEDERAL HABEAS CORPUS

On January 20, 2015, Petitioner, *pro se*, timely executed the instant Petition for a writ of habeas corpus raising the following grounds for relief:

> **GROUND ONE**: The trial court erred in preventing Appellant from introducing evidence of Shawna Young's prior conviction for soliciting for prostitution during cross-examination.
>
> **GROUND TWO**: The Defendant's conviction for one count of aggravated burglary and felonious assault are against the manifest weight and sufficiency of the evidence.

(Doc. 1).

### JURISDICTIONAL ISSUES

*Non-Cognizable Claims*

The Court will not have jurisdiction over Petitioner's claims for purposes of habeas corpus review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254. Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146

5

F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Importantly, merely asserting a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).

Nevertheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly", and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1977) (citations omitted)); *see also Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993). The habeas petitioner bears the burden to show "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

Ground One

Generally, assertions of error in evidentiary rulings are non-cognizable in habeas. *Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983); *Bell v. Arn*, 536 F.2d 123 (6th Cir. 1976). A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling itself violates federal law, either by infringing upon a specific federal constitutional or statutory provision, or by depriving the defendant of a fundamentally fair trial, as guaranteed by due process. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Evidentiary rulings by the state courts must be so egregious as to compromise the legitimacy of the evidence against the defendant; in effect, rendering the entire trial unfair. *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989). Only when an evidentiary ruling results in a denial of fundamental fairness will it amount to a denial of due process. *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990).

On direct appeal, the Fifth District examined Ohio law and determined Petitioner's challenge to the evidentiary ruling to be without merit:

> In his first assignment of error, appellant argues the trial court should have allowed him to cross-examine Young regarding a conviction for solicitation. We disagree.
>
> The admission or exclusion of evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). In order to find an abuse of discretion, the reviewing court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
>
> Evid.R. 609(A)(3) provides, subject to the trial court's weighing of the prejudicial impact of the question pursuant to Evid.R. 403(B), evidence that a witness has been convicted of a misdemeanor is admissible if the crime involves dishonesty or false statement. In this case, a witness was convicted of one count of solicitation, the elements of which are "no person shall solicit another to engage with such other person in sexual activity for hire." R.C. 2907.24(A).
>
> Solicitation does not involve dishonesty or a false statement. Appellant summarily argues solicitation is a crime of dishonesty, but the offense contains no element of deception. *See, State v. Walburg*, 10th Dist. Franklin No. 10AP–1087, 2011–Ohio–4762 (a crime of dishonesty by definition includes an element of deception identical to that in a theft offense or the making of a false statement). The rule makes no provision for impeachment by a crime of "moral turpitude." *State v. Griffin*, 5th Dist. Stark No. CA–9254, unreported, 1993 WL 471413, *1, appeal not allowed, 69 Ohio St.3d 1406, 629 N.E.2d 1368.
>
> We find the trial court did not abuse its discretion in excluding cross-examination concerning the prior conviction. Appellant's first assignment of error is overruled.

(Doc. 8-1, Ex. 7 at ¶¶22-26).

The Court finds the Fifth District's reasoning to be sound and supported by law. Furthermore, Petitioner has raised no argument that the evidentiary ruling denied him a

7

fundamentally fair trial. Thus, because Petitioner has failed to meet his burden, the Court recommends Ground One be dismissed as non-cognizable.

Ground Two

Ground Two challenges his convictions as against the manifest weight of the evidence under state law, this is a non-cognizable argument. *See Tibbs v. Florida*, 457 U.S. 31, 45 (1982); *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 389 (1997) (finding that sufficiency of the evidence and weight of the evidence are not synonymous legal standards). Any argument that Petitioner's conviction was against the manifest weight of the evidence fails as non-cognizable. Therefore, the Court will undertake only a merits analysis of his claims under the sufficiency of the evidence standard.

***Procedural Default***

Procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Lundgren v. Mitchell*, 440 F.3d 754 (6th Cir. 2006).

A habeas petitioner may fail to obtain consideration of a claim by a state court in two scenarios, either: (1) he failed to fairly raise the claim before the state courts while state remedies were still available, or (2) he failed to comply with a state procedural rule which prevented the state courts from reaching the merits of the petitioner's claim. *Wainwright v. Sykes*, 433 U.S. at 80, 84-87. In either of these scenarios, the claim is procedurally defaulted and may not be

considered by the federal court on habeas review. *Seymour v. Walker*, 224 F.2d 542, 550 (6th Cir. 2000).

As to the first type, a petitioner may procedurally default his constitutional claim by failing to fairly present it to the highest state court and to all appropriate state courts prior to that through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847. In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional claims on the record to the trial court, the court of appeals, and the Supreme Court of Ohio on direct appeal. *Caver v. Straub*, 349 F.3d. 340, 346 (6th Cir. 2003)(quoting *O'Sullivan*, 526 U.S. at 845).  Fair presentation requires that the claims must be presented at the first available opportunity, *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994), unless the petitioner can prove some external factor was the cause of his failure and prejudice resulted. *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

As to the second type of default – i.e. noncompliance with a state procedural rule, the court conducts a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. at 488). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[] a constitutional claim with a 'colorable showing of factual innocence.'" *Id.* at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell*, 428 U.S. 465, 492–93 (1976)).

Ground Two

Here, Petitioner failed to fairly present part of his second ground for relief for one complete round of appellate review. Respondent is correct in asserting that although Petitioner stated in his heading he was challenging the sufficiency of evidence to support his felonious assault conviction; his brief to the Fifth District contains no argument addressing the felonious assault conviction. (*See* Doc. 8-1, Ex. 5 at 12-14). The Fifth District even clarified in its' opinion that Petitioner did not challenge the sufficiency of evidence of his felonious assault conviction despite the stated ground for relief. (Doc. 8-1, Ex. 7 n.2). Further, in his memorandum in support of jurisdiction to the Ohio Supreme Court, Petitioner did not include any arguments related to the

10

sufficiency of evidence to meet the statutory elements of felonious assault; he only addressed the aggravated burglary conviction. (Doc. 8-1, Ex. 10 at 10-13).

Petitioner alleges in his Traverse that he extensively discussed evidence which contradicted his conviction for felonious assault; including hospital employee testimony and Tornero's contradictory statements that she was hit by the bathroom door and not Petitioner. (Doc. 10, at 4). He further alleges that he did not include more argument because of the page limitations imposed by the Ohio Supreme Court. (Doc. 10, at 4). However, it is clear from reviewing the memorandum in support of jurisdiction and his brief to the Fifth District that these evidentiary inconsistencies were raised in the context of his aggravated burglary conviction. It is true that the same alleged evidence which undermined his aggravated burglary conviction would also undermine his felonious assault conviction; yet, it does not excuse Petitioner's failure to raise these evidentiary issues in the context of felonious assault. Ultimately, Petitioner failed to argue his challenge to the sufficiency of evidence to support his felonious assault conviction to either the appellate court or the Ohio Supreme Court. Thus, it is procedurally defaulted unless he can prove cause and prejudice.

Petitioner has not asserted cause and prejudice to excuse this procedural default nor has he presented any new, reliable evidence to support a finding of actual innocence. Accordingly, the Court recommends ground two, as it pertains to the felonious assault conviction, be dismissed as procedurally defaulted.

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state

11

conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). *Id.* To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

*Sufficiency of the Evidence*

The standard for sufficiency of evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Consistent

12

with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume −even if it does not affirmatively appear in the record− that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).

As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008).

Further, it is important to note the double deference applicable; first, the deference accorded to the trier of fact's verdict by *Jackson*, and second, the deference to the state court's consideration of the verdict under AEDPA. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008); *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (finding even if a rational trier of fact could not have found petitioner guilty, the habeas court must defer to the state appellate court's sufficiency determination so long as it is reasonable). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Fifth District Court of Appeals addressed the sufficiency of evidence argument as follows:

> In his second assignment of error, appellant argues his conviction upon one count of aggravated burglary is against the manifest weight and sufficiency of the evidence. We disagree.
>
> The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
>
> In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*
>
> Appellant was convicted upon one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), which states "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply: [t]he offender inflicts, or attempts or threatens to inflict physical harm on another." Appellant argues appellee failed to establish he trespassed in the apartment with purpose to commit a criminal offense.
>
> "For purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes*, 87 Ohio St.3d 527, 2000–Ohio–472 721 N.E.2d 1037, syllabus. As appellee

14

> points out, the intent to do an act may be inferred from completion of the act. *State v. Rojas*, 64 Ohio St.3d 131, 140, 592 N.E.2d 1376 (1992). Appellee established appellant trespassed in Young's apartment, breaking in the door, and assaulted Tornero inside the bathroom by hitting her and kicking her in the face. Appellant argues Tornero is not credible because she told his investigator she was injured when the bathroom door struck her in the face. Assuming arguendo her injuries occurred in this manner, those injuries are a reasonably foreseeable result of appellant forcing his way into the bathroom. Tornero's injuries were a "natural and logical outcome" of the burglary and were neither "extraordinary [nor] surprising." *State v. Williams*, 4th Dist, Scioto No. 10CA3381, 2012–Ohio–6083, ¶ 40, appeal not allowed. 134 Ohio St.3d 1509, 2013–Ohio–1123, 984 N.E.2d 1102.
>
> This is not the exceptional case in which the evidence weighs heavily against appellant's conviction for aggravated burglary. We find the conviction is not against the manifest weight of the evidence and is supported by sufficient evidence, and therefore overruled appellant's second assignment of error.

(Doc. 8-1, Ex. 7 at ¶¶ 27-32).

Upon review of the evidence presented and the applicable law, the Court finds sufficient evidence exists to uphold Petitioner's conviction for aggravated burglary. While Petitioner challenges the credibility of Young and Tornero, the evidence that the front door was broken, and the evidence supporting his striking or kicking Ms. Tornero; all this does is question the conclusions of the jury. In his Traverse, Petitioner fastidiously noted inconsistencies in the testimony of both witnesses including a discrepancy of who entered the bathroom first, Young's statement that she did not see Petitioner hit Tornero, that the phone used to call 911 was not broken, and there was no evidence of damage to the door or repairs. (Doc. 10, at 5-8). Despite these inconsistencies, they do little to undermine the relevant statutory elements, especially considering the deference due to the state courts. Furthermore, even if Tornero was struck by the bathroom door after it was kicked in – Petitioner is responsible for the natural consequences of his actions, and a broken nose from a swinging door in a confined space is certainly a probable consequence of kicking in a door. Ultimately, the jury chose to believe Young and Tornero's

15

testimony that the door was smashed (and then later repaired) and that he, in some way, struck Tornero in the face.

Petitioner raises valid questions as to the evidence; however, simple inconsistencies are not enough to overturn the determinations made by the state courts. Here, the jury opted to believe the story and evidence as portrayed by Young and Tornero and it is not the place of this Court to overturn such determinations. *See Cavazos v. Smith*, -- U.S. --, 132 S.Ct. 2, 6-7 (2011). A rational trier of fact could find Petitioner guilty beyond a reasonable doubt of aggravated burglary and the state appellate court's application of the law to these facts was objectively reasonable. Therefore in light of the deferential standard applied, the Court recommends denying ground two.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Petition be denied in its entirety.

      s/James R. Knepp II
      United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).